UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ELLEN G., | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 2:23-cv-00020-JAW |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|       Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Plaintiff in this Social Security Disability (SSD) appeal faults the Administrative Law Judge (ALJ) for adopting the opinion of a testifying rheumatologist that she asserts was tainted by bias. *See* Plaintiff's Brief (ECF No. 15) at 8-10. I discern no error and recommend that the Court affirm the Commissioner's decision.

**I. Background**

The ALJ found, in relevant part, that the Plaintiff was insured for SSD benefits only through December 31, 2015, *see* Record at 17, and that, as of that date, she (1) had severe impairments of sine scleroderma and Raynaud's phenomenon, *see id.*; (2) retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels with no concentrated exposure to extreme cold, *see id.* at 19; (3) was capable of performing past relevant work as a personnel clerk, *see id.* at 22; and (4) therefore had not been disabled at any time from December 1, 2015, her

1

alleged onset date of disability, through December 31, 2015, her date last insured for SSD benefits (DLI), *see id.* at 24. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-3, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 404.981.

## II.  Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III.  Discussion

The Plaintiff's treating rheumatologist, Robert W. Simms, M.D., submitted a medical source statement dated July 23, 2021, in which he indicated that the Plaintiff's scleroderma significantly limited her ability to lift, carry, reach, handle, and finger and would cause her to be off task for 25 percent or more of a typical workday and absent from work for more than four days a month. *See* Record at

1132-36. In response to the question, "What is the earliest date that the description of *symptoms and limitations* in this questionnaire applies (alleged disability onset date in this case is 12/01/15 and **date last insured for Social Security Disability benefits is 12/31/15**)," Dr. Simms wrote, "12/2015." *Id*. at 1136.

The ALJ called medical expert Jill Silverman, M.D., a retired internist and rheumatologist, to testify concerning the Plaintiff's case. *See id*. at 41. With the benefit of review of Dr. Simms's records, Dr. Silverman testified that the Plaintiff had medically determinable impairments of ulcerative proctitis and scleroderma on or before her DLI and that, while those conditions were disabling as of August 2017, she found no evidence in the medical records that they were disabling or even caused any functional limitations as of the DLI. *See id*. at 42-44. She explained: "When the patients start developing ulcerative lesions, which [the Plaintiff] started developing in 2017, that's when we consider it severe. Prior to that, . . . we consider [it] a nuisance symptom." *Id*. at 46.

The Plaintiff's counsel inquired whether it was "correct that a doctor who [ha]s regularly treated and personally examined the patient over a period of years and has all of the patient's medical records is in a better position to continue to treat that patient and assess . . . their condition than a doctor who has never examined the patient." *Id*. at 47. Dr. Silverman responded, "Well, of course." *Id*.

The Plaintiff's counsel then asked whether Dr. Silverman would "agree that Dr. Sim[m]s' opinion is at least reasonable, even though you disagree with it as of December of 2015?" *Id*. at 48. Dr. Silverman asked whether Dr. Simms felt that the

3

Plaintiff was disabled as of 2015; the Plaintiff's counsel replied that he did. *See id*. Dr. Silverman then testified, "if you read through his notes . . ., that is not what his entries say. . . . [H]e has not documented visual ulcers" or "contractures" and "documents very clearly that the [Plaintiff] has scleroderma, sine scleroderma and there's no need for new suppression over and over and over again until 2017." *Id*. at 48-49.

The Plaintiff's counsel inquired, "It is correct that doctors don't write down all of their observations in their treatment or progress notes, isn't it?" *Id*. at 49. Dr. Silverman responded:

> I don't think that's correct. I can tell you that doctors are patient advocates and that these Social Security forms are not as objective as their notes. . . . And especially counsel supplied forms. That's my opinion [based on] [p]ersonal experience.

*Id*.

The ALJ found Dr. Silverman's testimony "generally persuasive," explaining that she had "supported her opinion with specific reference to the evidence in the record," her opinion was "consistent with the evidence in the record, which shows that physical examination findings from just following the relevant period were benign and there was no need for immunosuppressant therapy until 2017," she "had the opportunity to review the entire record," and her opinion was "within her area of specialization." *Id*. at 21. By contrast, the ALJ deemed the Simms opinion unpersuasive because it was "not well supported or consistent with the evidence over the period relevant to this decision." *Id*. at 22. She explained that, although Dr. Simms indicated that the limitations he included were "supported by physical

4

exam findings noting digital tip ulcers and finger contractures," there were "no physical examination findings over the relevant period or the period just after the [DLI] noting digital tip ulcers or finger contractures." *Id*.

The Plaintiff contends that Dr. Silverman's asserted bias undermined both the ALJ's reliance on the Silverman opinion and rejection of that of Dr. Simms, arguing:

> Because Dr. Silverman admitted that her assessment was based upon a pre-conceived bias regarding opinion statements obtained by claimants' representatives and that she had not even been aware that Dr. Simms had expressed an opinion regarding pre-DLI limitations until she was specifically asked about it, the ALJ erroneously found that her opinion testimony was well supported and consistent with the evidence and more persuasive than the opinion of Dr. Simms, especially because Dr. Silverman had previously admitted that a treating physician was in a better position to render such an opinion than she was.

Plaintiff's Brief at 9.  The Plaintiff emphasizes that (1) she sought treatment shortly before her DLI for swelling in her hands and fingers that had limited her ability to grasp and handle objects, (2) treatment records from 2016 focused primarily on attempts to find an accurate diagnosis, (3) Dr. Simms noted fingertip ulcers and finger contractures earlier than 2017, although he did not document them until then, and (4) Dr. Simms did document earlier hand symptoms and limitations that support his limitation to less than occasional use of her hands bilaterally.  *See id*.

These arguments are unavailing.  As the Commissioner notes, *see* Commissioner's Brief (ECF No. 17) at 8, "[t]he presumption is strong that medical experts who provide opinions to agencies are impartial, and collateral impeachment of a medical expert requires a strong showing of bias," *Wright v. Saul*, No. 20-11228, 2021 WL 4317465, at *3 (E.D. Mich. Sept. 23, 2021) (cleaned up).  The Plaintiff makes

5

no such showing. Dr. Silverman, a specialist in the field of rheumatology, cited Dr. Simms's own records in support of her conclusions, including the undisputed fact that he documented no fingertip ulcers or finger contractures until 2017. Dr. Silverman seemingly was unaware that Dr. Simms's 2021 opinion applied to the period beginning in December 2015 until after she had formed and expressed the opinion on which the ALJ relied, undercutting the notion that her opinion was the product of bias. Finally, even if Dr. Silverman harbored a bias against counsel-supplied forms, the Plaintiff has not shown that it tainted her ultimate analysis.

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: December 20, 2023

/s/ Karen Frink Wolf
United States Magistrate Judge